UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BENEFITALIGN, LLC, *et al.*,

    Plaintiffs,

    v.

CENTERS FOR MEDICARE &
MEDICAID SERVICES, *et al.*,

    Defendants.

Civil Action No. 24-2494 (JEB)

### ORDER

Plaintiffs BenefitAlign, LLC and TrueCoverage, LLC are entities that assist consumers in searching for and enrolling in subsidized healthcare plans under the Affordable Care Act. When Defendant Centers for Medicare & Medicaid Services suspended Plaintiffs from access to the ACA marketplace, they brought this action, alleging violations of the Administrative Procedure Act and the Due-Process Clause of the Fifth Amendment. See ECF No. 8 (Am. Compl.) at 11–14. They then moved for a Temporary Restraining Order. See ECF No. 9 (Am. TRO Mot.). Having heard oral argument last Friday and believing that Plaintiffs have not shown a likelihood of success on the merits, the Court now denies the Motion.

I.    **Legal Standard**

Motions for TROs and preliminary injunctions are governed by the same standards. Gomez v. Trump, 485 F. Supp. 3d 145, 168 (D.D.C. 2020). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

1

preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (alterations in original) (quoting Winter, 555 U.S. at 20). "The moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted." Hospitality Staffing Solutions, LLC v. Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)). Our Circuit has held that a failure to demonstrate a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction motion. See Ark. Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agric., 573 F.3d 815, 832 (D.C. Cir. 2009).

**II.     Analysis**

Defendants offer a number of bases on which the Court should deny the TRO, but it need look no further than success on the merits, the "first and most important factor" here. Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Beginning with Plaintiffs' APA count, the Court has serious questions about whether the suspension constitutes final agency action. "Where there is no final agency action, a plaintiff has no cause of action under the APA." Ramirez v. U.S. Immigr. & Customs Enf't, 310 F. Supp. 3d 7, 22 (D.D.C. 2018). It is well established that to be "final," an agency action must both "mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." U.S. Army Corps of Eng'rs v. Hawkes Co., 578 U.S. 590, 597 (2016) (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)). Here, given that CMS is currently conducting an audit that will determine Plaintiffs' final status, it is unclear why the interim suspension could stand as the consummation of the agency's decisionmaking process.

In any event, the regulation guiding CMS's decision offers substantial discretion to the agency. Cf. Alon Refin. Krotz Springs, Inc. v. EPA, 936 F.3d 628, 655 (D.C. Cir. 2019) ("Some cases involve regulations that employ broad and open-ended terms like 'reasonable' . . . . Those kinds of terms afford agencies broad policy discretion, and courts allow an agency to reasonably exercise its discretion to choose among the options allowed by the text of the rule.") (cleaned up). A direct-enrollment entity may be suspended if CMS "discovers circumstances that pose unacceptable risk to the accuracy of the Exchange's eligibility determinations, Exchange operations, or Exchange information technology systems." 45 C.F.R. § 155.221(e). This language does not require proof that systems have been compromised, only "circumstances" that pose a "risk" that is "unacceptable" in the eyes of CMS. While Plaintiffs may understandably argue that Defendants cannot demonstrate foreign penetration of the Exchange, that is not the standard. CMS has put forward sufficient proof of a risk it deems unacceptable. See Water Quality Ins. Syndicate v. United States, 225 F. Supp. 3d 41, 67 (D.D.C. 2016) ("[D]eference must be given to the agency's factual conclusions, even if reasonable minds could reach different conclusions."); ECF No. 10-2 (Decl. of Keith Busby), ¶¶ 7 (explaining that supply-chain assessment of Plaintiffs' parent company revealed that "risk to CMS data and information systems was critical"), 11 (describing "strong evidence of prohibited foreign access" to Plaintiffs' "enrollment platforms"), 15 (CMS review of platform access logs turned up "three unexpected IP addresses indicating that the platforms had been accessed from outside of the United States").

As to Plaintiffs' due-process claim, even assuming that they have a property interest in their contracts with CMS, they neither sufficiently set forth what process they claim they should

3

have received before the suspension nor explain why the full audit procedure that is taking place before a final decision is not enough.

### III.    Conclusion

For the foregoing reasons, the Court ORDERS that:

1. Plaintiffs' [9] Amended TRO Motion is DENIED; and

2. The parties shall appear via Zoom for a status hearing on October 2, 2024, at 11:00 a.m.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 30, 2024